NELLIE DONOVAN, Appellee, v. ALBERT D. DONOVAN, Appellant.

No. 45679.

NOVEMBER 18, 1941.

REHEARING DENIED MARCH 13, 1942.

Pressey H. Frank, for appellant.

Edward J. Wenner, for appellee.

STIGER, J.—Plaintiff sought a divorce from defendant on the ground of cruel and inhuman treatment. There was a decree for plaintiff awarding her the custody of the children, Robert, Albert and William, who were respectively 18, 16 and 13 years of age. The decree gave plaintiff the homestead, all household

furnishings, $11,000 in life insurance and $80 per month for the support of plaintiff and her children.

The residence is a modern home worth from $4,500 to $5,000, subject to a mortgage of $2,762.94. The household furnishings are of the value of approximately $1,500.

For ten years prior to the divorce, in addition to performing all of the household work, plaintiff had regular employment, earning about $70 per month. At the time of the divorce, defendant was earning about $190 per month.

The parties placed their earnings in a common fund. The homestead, furnishings and premiums on the policies were purchased and paid for with and the family supported by their joint earnings.

The home and insurance policies constituted all of plaintiff's and defendant's property and, as indicated, the decree deprived defendant of all his property.

Ordinarily, a wife is only entitled to such just share of the husband's property as is reasonable under all the circumstances and only in rare cases and under unusual circumstances will the court give all of the husband's property to the wife.

In this case plaintiff's earnings were invested in the home and its furnishings. This property could not be divided between the parties. Plaintiff has the obligation of providing a home for the children and the record shows that she will be able to maintain her family in this home more economically than by renting a suitable residence. A sale of this property, under the circumstances, would be most inadvisable. Plaintiff is required by the decree to pay future insurance premiums and to take the home subject to the mortgage. It is the small amount of property owned by the parties that makes difficult an equitable solution of alimony in this case.

Under all the circumstances, we are of the opinion the learned trial court was justified in awarding the property to plaintiff and this part of the decree is affirmed.

However, we are of the opinion that the provision of the decree requiring defendant to pay alimony in the sum of $80 each month should be modified. Plaintiff is earning $70 per month. We conclude from the record and especially from the testimony of the plaintiff that the amount reasonably necessary

each month to support and maintain plaintiff and her children in reasonable comfort is the sum of $135. We think it is reasonable to assume from the record that the three children will contribute to a degree to their support and to. the support of their mother as long as they remain in the home.

If defendant were required to pay plaintiff $80 per month he would have left $110 and we are satisfied that this amount is not reasonably adequate for defendant's support and maintenance. As stated, the decree deprives defendant of all of his property at the age of thirty-eight years and it is apparent that he will be unable to save any part of his remaining salary. We have often stated that it is not only the wife's necessity but also the husband's ability to pay that must be considered in deciding on the amount of alimony. The decree is modified by reducing the amount to be paid by defendant to the plaintiff for support and maintenance of herself and children from $80 to $60 per month.

II. Appellant further complains the court erred in permitting plaintiff to withdraw her waiver of privilege.

Section 11263, 1939 Code, provides that no physician shall be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the function of his office.

On cross-examination plaintiff testified she did not have a venereal disease. She was asked whether she would permit her physician to take the witness stand and testify as to her condition and she answered yes. She further testified:

"Q. And if you have any privilege with reference to the relationship that exists between you and the doctor because you are his patient, you are willing to waive that and let the doctor testify? A. Yes."

Before the physician was called as a witness plaintiff filed a motion to permit her to withdraw her waiver of privilege made on cross-examination. The court correctly held that under the circumstances she had the right to withdraw her waiver of privilege. The ruling of the court permitting withdrawal of the waiver made on cross-examination may also be sustained

on the ground that plaintiff did not have an understanding of her legal right, did not understand the meaning of the term "waiver" and did not have an opportunity to advise with her counsel. 70 C. J. 469; Metropolitan Life Ins. Co. v. Fitzgerald, 137 Ark. 366, 209 S. W. 77.

While the propriety of the cross-examination was not questioned in the lower court, we call attention to the case of McConnell v. The City of Osage, 80 Iowa 293, 303, 45 N. W. 550, 553, 8 L. R. A. 778, which holds that it is error to ask a patient on cross-examination if she will waive her statutory privilege. The court said:

" 'Q. Are you willing that the physicians who have treated you for past ten or fifteen years may disclose to this jury any conversation you made to them, at times they treated you, in reference to your condition'? Objections to the question being overruled, the plaintiff answered that she was not. The ruling is assigned as error, and we think it was manifestly so. Counsel for appellee does not in argument attempt to vindicate the ruling, and it would seem that an attempt must result in failure. The statute gives the prohibition. It is a legal right, and a party should no more be required to state under oath that he did not want to surrender it than any other legal right he possessed. We think a fair trial requires that such a matter should not even be referred to; that a jury should not be impressed with a belief that there is even reluctance to giving such assent. The subject-matter of such a waiver has no place for reference in the taking of testimony except by the party permitted to make it."

See, also, State v. Booth, 121 Iowa 710, at page 713, 97 N. W. 74.

III. Appellant further claims plaintiff voluntarily put in issue her physical condition (as to having a social disease) by testifying affirmatively to her complaints which indicated an extreme nervous condition which waived the privilege and deprived her of the benefit of section 11263, and the court erred in rejecting defendant's offer to prove by her physician that she consulted him on October 5, 1940, submitted to an exam-

ination and that he found she had a social disease acquired from some person other than her husband.

On direct examination plaintiff testified that because of her husband's conduct she had a nervous breakdown, that she consulted her physician who advised her to go to a hospital or go away from home for awhile. Assuming this testimony was a voluntary waiver of her statutory privilege, it referred to a communication made in the spring of 1940. Obviously, a voluntary waiver of her privilege as to this communication about her nervous condition would not be a voluntary waiver of the alleged confidential communication made to her physician on October 5, 1940. Nor can defendant introduce the proffered testimony of the physician to prove plaintiff's testimony untrue. Confidential communications are not admissible for the purpose of proving the patient testified falsely. McConnell v. City of Osage, 80 Iowa 293, 45 N. W. 550, supra; Battis v. Chicago, R. I. & P. R. Co., 124 Iowa 623, 100 N. W. 543; Jacobs v. City of Cedar Rapids, 181 Iowa 407, at page 420, 164 N. W. 891.

On cross-examination plaintiff testified that her physician at the time of the trial was treating her only for her nervous condition. This testimony does not support defendant's contention for the reasons stated above. If this testimony did amount to a confidential communication, we have frequently held that testimony given on cross-examination is not voluntary in a sense that it constitutes a waiver of the statutory privilege. Arnold v. Fort Dodge, D. M. & S. R. Co., 186 Iowa 538, 173 N. W. 252; Roberts v. Hennessey, 191 Iowa 86, 181 N. W. 798. —Modified and affirmed.

MILLER, C. J., and BLISS, GARFIELD, WENNERSTRUM, MITCHELL, and HALE, JJ., concur.