## IN THE COURT OF APPEALS OF IOWA

No. 17-1003
Filed February 7, 2018

IN RE THE MARRIAGE OF ERIC L. STAHR
AND ANNETTE M. STAHR

Upon the Petition of
ERIC L. STAHR,
　　　　Petitioner-Appelle,

And Concerning
ANNETTE M. STAHR, n/k/a ANNETTE BALK,
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Winneshiek County, Margaret L. Lingreen, Judge.


　　　　Annette Stahr, now Annette Balk, appeals from the denial of her petition to modify the physical-care provisions of her decree of dissolution of marriage to Eric Stahr. **AFFIRMED.**


　　　　Erik W. Fern of Putnam, Fern & Thompson Law Office, P.L.L.C., Decorah, for appellant.

　　　　Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.


　　　　Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DANILSON, Chief Judge.**

Annette Stahr, now known as Annette Balk, appeals from the denial of her petition to modify the physical-care provisions of her decree of dissolution of marriage to Eric Stahr. She argues the court's findings of fact are not supported by the evidence, there was a change of circumstances warranting modification, and she has shown she can provide the children superior care.

We review equity actions de novo. Iowa R. App. P. 6.907. We give weight to the trial court's findings of fact, particularly with regard to determinations of credibility, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

The parties were divorced in 2005, at which time they agreed their two children, N.M.S., born in 2000, and M.D.S., born in 2001, would be in Eric's physical care, with generally unspecified but liberal visitation with Annette. For the next ten years, the parties were able to co-parent successfully despite Annette's paramour's attempted suicide, Annette and her paramour relocating for several years, Eric's remarriage and divorce, Annette and her paramour returning to the same city as Eric and the children in 2014, and each parent having periods of depression.

In July 2015, however, Eric was called by N.M.S. asking to be picked up from Annette's home because Annette and her paramour were quarreling. When Eric arrived, Annette's paramour would not let Eric in and would not let the child out. Eric heard N.M.S. scream and he broke down the door.

On August 14, 2015, Annette filed a petition to modify the dissolution decree and requested a temporary order providing for specified visitation. Eric

resisted and asked that there be no contact between the children and Annette's paramour. The district court entered a temporary order providing Annette with alternate weekend visitation; however, there would be no overnight visits if Annette's paramour was in the home. There were no overnight visits after the temporary order.

Pursuant to a court order, a report was prepared by licensed social worker Jennifer Judson-Harms, who found there were some indications of parent-alienation by Eric yet recommended there not be a change of custody. Rather, Judson-Harms proposed Annette and the children seek counseling to repair their relationship and that Annette and Eric seek mediation to work on their co-parenting relationship.

At the trial on the modification petition, both children testified. N.M.S., now age seventeen, indicated she would appreciate a set visitation schedule of every other weekend with her mother and the ability to visit more frequently at her own choosing. M.D.S., age fifteen, testified she was satisfied with the current situation, though she acknowledged she should make more of an effort to see her mother.

The trial court entered its findings and conclusions in which it determined there had not been a substantial change of circumstances requiring a change of physical care. However, the court did modify the visitation provisions of the decree, as well as the amount of Annette's child-support obligation.

On appeal, Annette objects to the trial court's findings that Eric was not abusive and controlling, that Annette did not effectively communicate medical-treatment information with Eric, and that both parties failed to include the other in

decision-making. Annette argues Eric's behavior is the more egregious, and she has shown she is a superior parent and physical care should be switched from Eric to her.

The parties' two children testified at trial and prefer to stay in the current custodial arrangement, although both clearly love their mother and acknowledge they should spend more time with her. At the time of filing our opinion, N.M.S. will be eighteen years of age. Thus, any change in physical care or visitation terms would only be applicable to M.D.S. We also note M.D.S. will be sixteen years of age and based upon her plans she will likely be a licensed driver. Both parties now reside in the same town although Annette has plans to move to nearby Fort Atkinson.

Our supreme court has recently addressed the applicable principles to apply to a child's preference in modification actions in stating,

> The court considers a child's wishes on this question, taking into account the child's age and maturity. Iowa Code § 598.41(3)(f) (2013); *see* [*In re Marriage of* ] *Hansen*, 733 N.W.2d [683,] 696 [(2007)] (stating although section 598.41(3) does not expressly apply to physical care decisions, the factors in the statute are relevant considerations); *see also Jones v. Jones*, 175 N.W.2d 389, 391 (Iowa 1970) ("[W]hen a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling, may be considered by the court, with other relevant factors, in determining child custody rights.").

*In re Marriage of Hoffman*, 867 N.W.2d 26, 35 (Iowa 2015). We have also suggested other factors may be considered such as educational level, the strength of the preference, the reason for the preference, the advisability of recognizing the child's wishes, and the recognition that we have limited

knowledge of what may have influenced the child's preference. *See In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258-60 (Iowa Ct. App. 1985).

After our de novo review, we find no reason to disturb the trial court's analysis, determinations, and conclusions. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (noting the "heavy burden" on a party seeking to modify child custody). We give weight to the statements and preferences of these two teenagers because of their age and both appear by their testimony to be mature, intelligent, and have provided a reasonable explanation for their opinion.

We also agree with the district court that the acts upon which Annette relies to support a substantial change in circumstances were isolated incidents. Annette also contends she has not had an overnight with the children in ten months. She contends this circumstance shows Eric is not fostering her relationship with the children. However, this unfortunate fact is not solely the blame of Eric. A temporary order permitted overnights only when Annette's paramour was not present; yet, apparently Annette never made such arrangements. These children need both parents in their lives and both children should be grateful to have two parents who care about them. The district court's order is a positive step to improve all relationships and everyone should step up to the plate and make it happen.

Upon the issues presented to us, we agree there has been no showing of a substantial change of circumstances. We therefore affirm.

Eric seeks an award of appellate attorney fees. An award of appellate attorney fees rests in this court's discretion. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We do not award appellate attorney fees.

Costs are assessed to Annette.

**AFFIRMED.**